Bryon K. Russ, Sr.,

        Petitioner,

   -vs-

John Burge,
Superintendent,
Auburn Correctional Facility,

        Respondent.
_____

**DECISION AND ORDER**
**No. 04-CV-6472T**

## I.   Introduction

*Pro se* petitioner Bryon K. Russ ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered January 17, 2001, in New York State, County Court, Ontario County, convicting him, after a jury trial, of two counts of Robbery in the First Degree (N.Y. Penal Law § 160.15[2], [4]), one count of Assault in the First Degree (N.Y. Penal Law § 120.10[4]), and one count of Criminal Possession of a Weapon in the Second Degree (N.Y. Penal Law § 265.03[2]).

For the reasons stated below, the petition is denied.

## II.  Factual Background and Procedural History

The charges arose from an incident that occurred on May 24, 2000, in which Petitioner shot Sincere Holmes ("Holmes" or "the victim") in the leg over a gang-related dispute.

On the evening of May 24, 2000, Petitioner, Holmes, Rasheem Harris ("Harris"), Rasheen Madison ("Madison"), and T'Jay Desassure[1] ("Desassure") met up at a bar in Geneva, New York. At some point thereafter, the five left Geneva in a tan or brown Dodge minivan, driven by Petitioner. Trial Transcript [T.T.] 105-06, 172-75. The five individuals were headed to Rochester. T.T. 113. As they were headed out of Geneva, Petitioner stopped the car on a back road, apparently to urinate. T.T. 114. Petitioner pulled out a .25 caliber handgun and pointed it at Holmes. T.T. 117. As he did so, Petitioner indicated to Holmes that Holmes was "0-32"[2] because he snitched on Petitioner's friend. T.T. 112-16, 176-80. Petitioner, Harris, and Madison robbed Holmes and took his jacket, cell phone, and $70 in cash. Petitioner then ordered Holmes out of the car and told him to lie on the ground. T.T. 116-21, 180-82. Believing he was going to be executed, Holmes began to scuffle with Harris and Madison. Petitioner then shot at Holmes with the .25 caliber handgun, causing a bullet to pass through Harris's thumb and ultimately lodging in Holmes's leg. T.T. 121-24, 183-87. In the darkness and confusion, Petitioner dropped the gun and Holmes ran into the woods, bleeding from his leg wound. T.T. 121-22, 135-36. He managed to run to a nearby house where he called for help and then collapsed in a puddle of blood on the front porch. T.T. 265. The house's occupant called for the police and an ambulance. T.T.

---

[1] This individual was never criminally charged.

[2] This is apparently gang slang for "dead".

68-72, 124-26, 164-65.  When the police arrived, Holmes told police that he was shot by one of three or four black males in a tan, brown or beige SUV.  That information was broadcast to law enforcement, and moments later, police stopped a vehicle fitting that description.  T.T. 179-80.  Petitioner was driving the vehicle containing three occupants.  All four occupants were removed from the van.  T.T. 183-84.  The police observed a white, bloody towel inside.  T.T. 205.  They also smelled marijuana emanating from the vehicle.  T.T. 185.  The four occupants were then taken to the Geneva Police Department for questioning and the police sought and obtained a search warrant for the van.  T.T. 224-25.  Police discovered the following items during the search:  a bloody towel, a .25 caliber handgun and live .25 round, and some of the victim's personal belongings.  T.T. 271-79.  While at the police station, and after he had been advised of his rights, Petitioner asked police how much time he would get in prison for what he had done.  T.T. 249.

Following his indictment, Petitioner filed a motion seeking to dismiss the indictment on the ground that he was deprived of his statutory right to appear before the grand jury as a witness on his own behalf.  By Decision dated August 23, 2000, the Ontario County Court granted Petitioner's motion.  By Notice of Motion dated August 29, 2000, the prosecution moved for an order granting reargument and reconsideration of the August 23, 2000 decision.  This application was granted, and the Ontario County Court vacated

the August 23, 2000 decision on September 8, 2000 and denied Petitioner's motion to dismiss the indictment.

A combined <u>Huntley</u>/<u>Mapp</u> probable cause hearing was held before the Ontario County Court on October 18, 2000 and November 15, 2000. At the conclusion of the hearing, the Ontario County Court found that there was reasonable grounds for the police to stop the minivan and therefore denied suppression of the items found in the van, as well as the statements made by Petitioner. Hearing Minutes of November 15, 2000, 119-24.

A trial was held in the Ontario County Court on January 16 and 17, 2001. Petitioner did not testify on his own behalf and no witnesses were called by the defense. Desassure testified as an eyewitness for the prosecution. The jury returned a verdict of guilty of all counts of the indictment. On February 21, 2001, he was sentenced to concurrent, definitive sentences of imprisonment as follows: 24 ½ years for robbery, 10 years for assault, and 7 years for criminal possession of a weapon.

On or about March 15, 2002, Petitioner filed a timely Notice of Appeal, and his conviction was affirmed by the Appellate Division, Fourth Department. <u>People v. Russ</u>, 292 A.D.2d 862 (4th Dept. 2002). Leave to appeal to the New York State Court of Appeals was denied on August 12, 2002. <u>People v. Russ</u>, 98 N.Y.2d 713 (N.Y. 2002).

On or about March 18, 2003, Petitioner sought to vacate his conviction pursuant to N.Y. Criminal Procedure Law (C.P.L.)

§ 440.10.  The motion was denied by the Ontario County Court by Decision and Order of May 28, 2003 (D. and O. of 05/28/03).  Leave to appeal to the Appellate Division was denied on September 17, 2003.  An application for leave to appeal to the New York State Court of Appeals was dismissed on November 13, 2003.

On or about February 26, 2004, Petitioner filed a motion for a writ of error *coram nobis* with the Appellate Division, which was denied on April 30, 2004.  People v. Russ, 6 A.D.3d 1251 (4th Dept. 2004).  The New York Court of Appeals denied leave to appeal on August 30, 2004.  People v. Russ, 3 N.Y.3d 681 (N.Y. 2004).  This habeas petition followed[3].

### III. General Principles Applicable to Habeas Review

#### A.    The AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

---

[3]    Petitioner filed a Traverse with this Court on April 21, 2005, wherein he consolidates the claims enumerated in his habeas petition. Traverse [T.V.] 2.  Petitioner states: "Petitioner, for the purpose of time and convenience, will only be presenting Three Grounds to this Court, those Grounds being:  The Court Lacked Jurisdiction of All Proceedings After it had Granted the Defendant's [Petitioner] Motion to Dismiss the Indictment, and the Matter was Never Resubmitted to the Grand Jury[;] Ground Two: Petitioner Was Denied His Right to Assistance of Counsel at/or Between Arraignment Upon the Felony Complaints and Arraignment Upon the Indictment, and Due Process[;] Ground Three: Petitioner's Appellate Counsel Was Ineffective for Failing to Raise Ineffective Assistance of Trial Counsel and Prosecutorial Misconduct."

States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id.

-6-

This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." <u>Francis S. v. Stone</u>, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>see also</u> <u>Parsad v. Greiner</u>, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), <u>cert. denied sub nom.</u> <u>Parsad v. Fischer</u>, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

## B. Exhaustion Requirement

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); <u>see, e.g.,</u> <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 843-44 (1999); <u>accord, e.g.,</u> <u>Bossett v. Walker</u>, 41 F.3d 825, 828 (2d Cir.1994), <u>cert. denied</u>, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been

'fairly presented' to the state courts." <u>Daye v. Attorney General</u>, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), <u>cert. denied</u>, 464 U.S. 1048 (1984).

### C.   The Adequate and Independent State Ground Doctrine

"It is now axiomatic that 'cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred.'" <u>Dunham v. Travis</u>, 313 F.3d 724, 729 (quoting <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991)).  "A habeas petitioner may bypass the independent and adequate state ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice, i.e., that he is actually innocent of the crime for which he has been convicted." <u>Id.</u> (citing <u>Schlup v. Delo</u>, 513 U.S. 298, 321 (1995); <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986)).

Although the Supreme Court "has repeatedly cautioned 'that the [independent and adequate state law ground] doctrine applies to bar consideration on federal habeas of federal claims that have been defaulted under state law,'" <u>Dunham</u>, 313 F.3d at 729 (quoting <u>Lambrix v. Singletary</u>, 520 U.S. 518, 523 (1997) (emphasis added by Second Circuit), the Second Circuit has observed that "it is not the case 'that the procedural-bar issue must invariably be resolved first; only that it ordinarily should be[,]'" <u>id.</u> (quoting <u>Lambrix</u>, 520 U.S. at 525 (stating that bypassing procedural questions to reach the merits of a habeas petition is justified in rare

situations, "for example, if the [the underlying issue] are easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law")).

## IV. Petitioner's Claims

### 1. The Trial Court Lacked Authority to Reinstate Indictment/Failure to Re-Present Case to Grand Jury

Petitioner argues that he was denied due process when the trial court reinstated the dismissed indictment without re-presenting the case to the grand jury and obtaining a new indictment.[4] According to Petitioner, in the absence of a new indictment, the trial court lacked jurisdiction over all subsequent proceedings after the indictment was dismissed. Pet. ¶22A, App. C.; T.V. 16-29. This claim must be dismissed because, contrary to Petitioner's understanding of the law[5], it does not state a claim of federal constitutional dimension.

The law is well settled that there is no federal constitutional right to indictment by a grand jury in a state criminal prosecution. See Alexander v. Louisiana, 405 U.S. 625, 633 (1972) ("Although the Due Process Clause guarantees petitioner a fair trial, it does not require the States to observe the Fifth Amendment's provision for presentment or indictment by a grand

_____

[4]    It is noted that Petitioner raised this claim on direct appeal and the Appellate Division rejected it on the merits. People v. Russ, 292 A.D.2d 862 (4th Dept. 2002). It stated, "[c]ontrary to defendant's contention, the court had the authority to reinstate the indictment upon reargument without the necessity of a new Grand Jury presentation."

[5]    Petitioner argues that "[a] claim based on 'jurisdiction' triggers the rights under the Fourteenth Amendment, which is applicable to the state." T.V. 17.

jury."); _see also_ _LanFranco v. Murray_, 313 F.3d 112, 118 (2d Cir.

2002) (noting that the Fifth Amendment's right to a grand jury

indictment had not been incorporated against the states through the

Fourteenth Amendment) (citations omitted).  The New York Court of

Appeals has recognized that the "[t]he right to indictment by a

Grand Jury in New York is dependent solely upon [the] State

Constitution . . . ." _People v. Iannone_, 45 N.Y.2d 589, 594 n.3

(N.Y. 1978) (citations omitted).  Federal habeas relief, however,

is not available for mere violations of state law.  _See_ _Estelle v._

_McGuire_, 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a).

Therefore, this claim is not cognizable on habeas review and

must be dismissed.

### 2. **Petitioner claims he was denied assistance of counsel**

Petitioner alleges that he was unrepresented by counsel from

the time of his arrest on May 25, 2000 until his arraignment on the

indictment on August 16, 2000[6], when counsel was assigned to him.

Based on this allegation, Petitioner contends he was denied his

Sixth Amendment right to counsel.  Pet. ¶22A, App. C.; T.V. 30-45.

_____

[6]     It is noted that Petitioner suggests an original (additional)
arraignment occurred on May 25, 2000 in the Farmington Town Court.  There is
nothing in the record that evidences such an arraignment occurred on this day.
Instead, this was the day that Petitioner was arrested.  The record reflects
that James F. Miller, Esq. appeared at Petitioner's arraignment on the
indictment in the Ontario County Court on August 2, 2000 and the indictment
was read to Petitioner.  No plea was entered and, based upon Miller's
statement that Petitioner was dissatisfied with his representation, the matter
was adjourned for the assignment of new counsel.  On August 16, 2000,
Petitioner appeared with his new counsel, Robert Gosper, Esq. and a plea of
not guilty was entered.  Accordingly, this Court construes the period from May
25, 2000 (the date of the arrest) up through August 16, 2000 (the date he
appeared for arraignment on the indictment with assigned counsel Gosper and
entered a plea of guilty) as the period in which this claim is premised upon.

Petitioner raised this claim in his C.P.L. § 440.10 motion, and it was denied by the Ontario County Court pursuant to C.P.L. § 440.10(3)(a) because Petitioner could have placed the facts in support of the motion on the record prior to sentencing[7]. D. and O. 05/28/03. By relying on C.P.L. § 440.10(3)(a), the state court invoked a state procedural rule which constitutes an adequate and independent state ground for rejecting the claim. See, e.g., Cameron v. People of the State of New York, No. 01 Civ. 9988BSJGWG, 2002 U.S. Dist. LEXIS 24841 (S.D.N.Y. Dec. 30, 2002)("CPL § 440.10(3)(a) constitutes an adequate and independent state ground that prevents a federal court from reviewing the merits of the claim."); Aquilera v. Walsh, No. 01 Civ. 2151, 2001 U.S. Dist. LEXIS 16711 (S.D.N.Y. Oct. 17, 2001) (citing § 440.10(3)(a) as one of New York's "procedural default" rules barring federal habeas review of the claim). Petitioner is not limited to one C.P.L. § 440.10 application; however, in this instance, the factual bases for his claim were known prior to his sentencing and were demonstrable without resort to matters outside the record. Raising this issue on a further motion to vacate would be futile since the state court already denied the claim due to Petitioner's failure to follow a state procedural rule. Consequently, the claim is deemed exhausted but procedurally barred. See Grey v. Hoke, 933 F.2d 117, 120-21 (2d Cir. 1991).

---

[7]     It is noted that the Ontario County Court also denied the claim on the merits, finding that "[d]efendant had failed to overcome the presumption he was advised of his rights."

This Court is precluded from considering a procedurally defaulted claim unless Petitioner "can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." Harris v. Reed, 489 U.S. 255, 262 (1989) (citations and internal quotations omitted); see also Schlup v. Delo, 513 U.S. 298, 321(1995) (a fundamental miscarriage of justice requires a showing of "actual innocence"). Petitioner fails to allege cause for the default or prejudice attributable thereto, nor does he attempt to show that a fundamental miscarriage of justice will occur should this Court decline to review his claim. This Court finds no basis on the record for overlooking the procedural default. Accordingly, the claim must be dismissed.

### 3. Petitioner's claim of ineffective assistance of counsel

#### A. Ineffective assistance of assigned counsel (Miller)

Petitioner alleges that he was denied effective assistance of counsel because his original assigned counsel (James F. Miller, Esq.) failed to advise him of his right to testify before the grand jury. Pet. ¶22A, App. C; T.V. 46-94. Petitioner raised this claim on direct appeal[8], and the Appellate Division rejected it on the merits, finding that "[t]he alleged failure of defense counsel

---

[8] It is noted that Petitioner subsequently raised this claim again in a C.P.L. § 440.10 motion, and the motion was denied by the Ontario County Court on procedural grounds (pursuant to § 440.10(3)(a)) and, alternatively, on the merits. D. and O. of 05/28/03.

to effectuate defendant's desire to testify before the Grand Jury, standing alone, does not constitute ineffective assistance of counsel." Memorandum and Order 03/15/02. Thus, the claim is exhausted and properly before this Court. See 28 U.S.C. § 2254(b).

To establish that a petitioner was deprived of his Sixth Amendment right to the effective assistance of trial counsel, a petitioner must show that (1) his attorney's performance was deficient, and that (2) this deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficiency is measured by an objective standard of reasonableness, and prejudice is demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." Id. To succeed, a petitioner challenging counsel's representation must overcome a "strong presumption that [his attorney's] conduct falls within the wide range of reasonable professional assistance." Id. at 689. A reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," id., and may not second-guess defense counsel's strategy. Id. at 690. Here, Petitioner has failed to demonstrate that his counsel's conduct was deficient within the meaning of Strickland, and that, but for the deficiency, the result of his trial would likely have been different.

There is nothing in the record to substantiate Petitioner's claim that his assigned counsel (Miller) failed to advise him of his right to testify before the grand jury. Even assuming, *arguendo*, that Petitioner was not advised of his right to testify before the grand jury, or that counsel prevented him from doing so in some way, Petitioner has offered no evidence to demonstrate that his failure to testify prejudiced his defense. See Brown v. Artuz, 124 F.3d 73, 79-81 (defendant claiming ineffective assistance due to counsel's failure to advise about personal right to testify must still establish prejudice under second prong of Strickland). Furthermore, he does not indicate what testimony he would have offered had he appeared before the grand jury or how such testimony would have assisted his case. Given the eyewitness testimony of the victim and Desassure, along with the physical evidence and the Petitioner's incriminating statements made to police, it is highly unlikely that the grand jury would have failed to indict Petitioner. See Rega v. United States, 263 F.3d 18 (2d Cir. 2002), cert. denied, 534 U.S. 1096 (2002) (counsel was not ineffective for preventing defendant from testifying where there was no prejudice to defendant from failure to testify because his testimony would not have been persuasive in light of prosecution's evidence).

This Court notes, in addition, that the claim is also meritless since Petitioner has no constitutional right to appear before a grand jury. See Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989) (right to testify before a grand jury is a state statutory

right and is not of constitutional dimension). In this regard, counsel was not ineffective for failing to advise Petitioner of a federal constitutional right which he did not have.

Accordingly, this Court finds the Appellate Division's rejection of this claim is neither "contrary to" nor an "unreasonable application" of Supreme Court law. Habeas relief must be denied.

## B. Remaining ineffective assistance of counsel claims as to attorney Gosper

Petitioner also raises various other claims of ineffective assistance of trial counsel (Robert Gosper, Esq.) in his habeas petition by way of reference to his *coram nobis* motion. In particular, he contends trial counsel (Gosper) was ineffective for (1) failing to use medical records to impeach the victim's testimony; (2) failing to consult with and call Petitioner's alibi witnesses; (3) failing to exploit various other defects and inconsistencies in the People's proof. Pet. ¶22A, App. C. Petitioner raised these claims in his application for *coram nobis*, which was summarily denied by the Appellate Division, Fourth Department. Summary denial of Petitioner's motion constitutes an adjudication on the merits of this claim. Sellen v. Kuhlman, 261 F.3d 303, 314 (2d Cir. 2001).

This Court notes that an application for *coram nobis* is generally an inappropriate forum for bringing an ineffective assistance of trial counsel claim for the first time. See Turner

v. Artuz, 262 F.3d 118, 123-24 (2d Cir. 2001) ("'the writ of error *coram nobis* lies in [the state appellate court] only to vacate an order determining an appeal on the ground that the defendant was deprived of the effective assistance of appellate counsel.'") (quoting People v. Gordon, 183 A.D.2d 915 (2d Dep't 1992))); C.P.L. § 440.10(1)(h). However, since the Appellate Division did not expressly reject the ineffective assistance of trial counsel claims individually or separately, and because Petitioner's ineffective assistance of trial counsel claims are interwoven with his ineffective assistance of appellate counsel claims (which were appropriately brought via the *coram nobis* motion), this Court will review the merits of these claims, affording them AEDPA deference.

Petitioner's first argument is that Gosper failed to bring to the jury's attention the purported fact that, contrary to Holmes's testimony that the bullet that struck him was still in his leg, the bullet had actually been removed during an operation at Strong Hospital. Petitioner contends that this would have demonstrated Holmes's lack of credibility and would have also called into question why the prosecution did not compare the recovered bullet with the handgun that was seized from the vehicle. This argument fails, however, because the bullet was never recovered from the victim's leg. The portion of the bullet that was lodged in the victim's leg was not removed during the surgery that was performed to repair the gunshot wound. Affidavit of Mark G. Davies, M.D., ¶4. Therefore, this Court cannot find that Gosper was ineffective

in failing to attempt to impeach the victim's credibility, or in failing to assert that there was a bullet that had been recovered and was available to be compared with the gun that was recovered from the vehicle. Thus, this Court need not reach the prejudice prong of <u>Strickland</u>.

Second, Petitioner argues that Gosper failed to consult with the petitioner's alibi witnesses and failed to call them at trial. This argument also fails because Petitioner indicated to Gosper that he did not have an alibi. Affidavit Robert Gosper, Esq. (Aff. R.G.), ¶4. Contrary to Petitioner's contention, Gosper's affidavit indicates that Petitioner told him that he was not with any witnesses at the time of the crime. Aff. R.G. ¶4. Therefore, this Court cannot find that Gosper was ineffective in failing to file an alibi notice or failing to call an alibi witness when such a person/people did not even exist. Thus, this Court need not reach the prejudice prong of <u>Strickland</u>.

Last, Petitioner argues Gosper was ineffective in failing to exploit various defects and inconsistencies in the People's proof. These include, but are not limited to, alleged inconsistencies in the testimony of the witnesses and presentation of certain issues that would have created reasonable doubt in the jury's mind had they been further explored. This Court, however, has reviewed the record and agrees with Respondent that none of these alleged deficiencies, either individually or collectively,

are such as to create a reasonable probability that the result of the trial would have been different had such alleged errors not been committed.  The proof against Petitioner in this case was overwhelming, and this Court cannot find that there is a reasonable probability the outcome of the case would have been  different had these alleged errors of trial counsel not been committed.

Thus, the Appellate Division's rejection of these claims was neither "contrary to" nor an "unreasonable application of" settled Supreme Court law.  Habeas relief must be denied.

### B.  Ineffective assistance of appellate counsel (Tyo)

Petitioner alleges his appellate counsel was ineffective for failing to raise ineffective assistance of trial counsel and for failing to raise a claim of prosecutorial misconduct on direct appeal.  Pet. ¶22A, App. C;  T.V. 46-104.  Petitioner raised this claim in his *coram nobis* motion, which was summarily denied by the Appellate Division, Fourth Department.  Summary denial of Petitioner's motion constitutes an adjudication on the merits of this claim.  Sellen, 261 F.3d at 314.

The Strickland standard of ineffective assistance of counsel applies equally to trial and appellate counsel.  See Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994), cert. denied, 513 U.S. 820 (1994).  Counsel is not required to raise all colorable claims on appeal.  See Jones v. Barnes, 463 U.S. 745, 751 (1983). Rather, counsel may winnow out weaker arguments and focus on one or two key

claims that present "the most promising issues for review." Id. at 751-53.  And, of course, counsel is "strongly presumed to have rendered adequate assistance and [to have] made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 689-90.

Here, Petitioner cannot meet either prong of Strickland.  He alleges that appellate counsel was ineffective for failing to raise a claim of ineffective assistance of trial counsel for failure to raise the claims discussed under Section "3A" above.  However, as discussed above, these claims are meritless.  This Court, therefore, finds that appellate counsel exercised reasonable professional judgment in selecting the three issues[9] raised on direct appeal, and ignoring those meritless that Petitioner now raises.

Moreover, as demonstrated by the affidavits of Davies and Gosper, petitioner's ineffective assistance of trial counsel claim requires an examination of facts outside the trial record.  Thus, appellate counsel could not properly raise these off-the-record claim's on direct appeal.

---

[9]     These issues are as follows: (1) the vehicle stop was not based upon reasonable suspicion; it escalated to a full-blown arrest, requiring probable cause, which was lacking; (2)  the failure of defendant's attorney to notify defendant of date and time at which defendant was to appear to testify before the grand jury amounted to a denial of defendant's right to assistance of counsel and a denial of his right to appear before the grand jury;  and (3) the court lacked jurisdiction of all further proceedings after it had granted the defendant's motion to dismiss the indictment; there was no order reinstating the indictment, and the matter was never resubmitted to the grand jury.  Counsel's brief cited the relevant law and facts and persuasively argued for reversal on each of these points.

Petitioner alleges appellate counsel was deficient for failing to raise a claim of prosecutorial misconduct on direct appeal, yet has failed to state a claim upon which this Court can grant relief. Petitioner instead makes an unsubstantiated, sweeping allegation[10] that amounts to nothing more than a sort of "conspiracy theory", unsupported by the record and devoid of legal argument.

Viewing appellate counsel's conduct as a whole, he provided meaningful, effective representation. Since Petitioner could not have succeeded on any of the other claims advanced in his *coram nobis* motion which are now before this Court, it is clear that he could not have been prejudiced by counsel's failure to raise these claims.

This Court finds that the Appellate Division's rejection of this claim was neither "contrary to" nor an "unreasonable application of" settled Supreme Court law. Habeas relief must be denied on this claim.

## V.    Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because petitioner has failed to make "a

---

[10]    He states: "Appellate counsel intentionally withheld material evidence from the appellate court, which, if presented, would have shown that the Petitioner's trial counsel, the Prosecutor, the Prosecutor's witnesses, and victim, all committed perjury and either withheld, omitted, or suppressed documentary proof that would have exonerated Petitioner, also, documentary proof shows that either the Prosecutor or police, or [b]oth, along with Petitioner's trial counsel, fabricated evidence and were in a 'team effort' to obtain Petitioner's conviction." Pet. ¶22A, App. C.

substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), I decline to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917, 8 L. Ed.2d 21 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    September 14, 2009
          Rochester, New York